UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WADE S. BRADLEY,

        Plaintiff,

v.

RAFEEK WOODS, et al.,

        Defendants.
_____/

Case No. 1:23-cv-499

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred, in part, during a prior incarceration and continued

while Plaintiff was a free citizen. According to the MDOC Offender Tracking Information System (OTIS), the latest possible date that Plaintiff was discharged from prison is November 30, 2018[1], and he was not incarcerated again until at least March 16, 2021, when he committed an operating while intoxicated offense. *See* OTIS, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=364936. (last visited July 17, 2023).

Plaintiff sues medical professionals and employees of Spectrum Health Lakeland Medical Center in Benton Harbor, Michigan. Specifically, Plaintiff names as Defendants: Neurosurgeon Rafeek Woods; Noah Arker, RN; Unknown Barry, MD; Catherine DeLeeuw, MD; Roman Hyszcak, MD; Corita Wheeler, DO; Vincent Blum, MD; Katie Trumbly; Receptionist Unknown Party #1; and Kim Martin.

In his complaint, which is not a model of clarity, Plaintiff alleges that he fell down approximately thirty stairs at his residence on September 28, 2018, injuring his back, neck, and arm. Plaintiff states that Defendants Wheeler, Blum, DeLeeuw, and Hyszcak failed to provide him with proper treatment. Plaintiff was referred to Defendant Barry, but Defendant Barry denied Plaintiff treatment. Plaintiff made multiple trips to the hospital for a broken arm, pain, and services. Finally in November of 2018, Plaintiff was scheduled for his referral appointment with Defendant Barry, but Plaintiff was turned away because of his race and disability. Plaintiff was finally placed in a cast in early December of 2018, which would have been after his discharge from prison. Plaintiff never had any treatment for his back injury.

Plaintiff states that he was hospitalized in Ocala, Florida, in December of 2018 while visiting there. Plaintiff alleges that his back gave out, and he spent five days in the hospital.

---

[1] The Court notes that pursuant to OTIS, November 30, 2018 is Plaintiff's sentence discharge date, but it is unclear whether he served his entire sentence in prison or whether he was released on parole prior to that date. However, for purposes of this opinion, the Court assumes, without deciding that Plaintiff served his entire sentence in prison.

Plaintiff eventually returned to Michigan and was hospitalized twice in February of 2019. At some point, Plaintiff was prescribed Gabapentin for his back injury and his arm was treated.

Plaintiff was told to go to physical therapy, and he attempted to go in June of 2019, but the pain prevented him from participating in therapy. At this point, Defendant Woods agreed that Plaintiff needed surgery. Plaintiff was given an MRI so that Defendant Woods could see the extent of his injury. In November of 2019, Plaintiff had still not had surgery and states that he became outraged. Plaintiff apparently conveyed his outrage in such a way as to cause him to be asked to leave the premises. Plaintiff then sought treatment from Browning Claytor Health Center, but by then the Covid-19 pandemic had begun, and he never received treatment.

Plaintiff seeks damages and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally

4

the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally*, *Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff brings this lawsuit as a § 1983 action against Defendants. However, Plaintiff has not presented any allegations by which Defendants' conduct could be fairly attributed to the State. The fact that the Defendant doctors are licensed by the state does not render them "state actors" for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that nonprofit, privately operated school's receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (concluding that allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315–16 (6th Cir. 1988) (holding that the fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Further, even if Defendants initially treated Plaintiff at the state's request and expense, they did not thereby become state actors. *See Rendell-Baker*, 457 U.S. at 841 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Bell v. Mgmt. and Training Corp.*, 122 F. App'x 219, 223 (6th Cir. 2005) (holding that a private company operating state corrections facilities is not a state actor).

Plaintiff has not presented any allegations by which the conduct of any of the named Defendants could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against them.

5

Moreover, the Court notes that Plaintiff fails to set forth any factual allegations against Defendants Arker, Trumbly, Unknown Party #1, or Martin in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims against Defendants Arker, Trumbly, Unknown Party #1, and Martin fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against them.

### III. State law claims

As noted above, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar*, 457 U.S. at 924. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th

Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, to the extent that Plaintiff might be asserting violations of state law, he fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims will be dismissed without prejudice. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: July 18, 2023　　　　　　　　　　　　/s/ Hala Y. Jarbou
　　　　　　　　　　　　　　　　　　　　　HALA Y. JARBOU
　　　　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE